1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

## DISTRICT OF NEVADA

7
8   VELVETTE HANNIG,                          )
                                             )
9                       Plaintiff,            )        Case No. 2:12-cv-02058-LDG-GWF
                                             )
10  vs.                                       )        **FINDING AND**
                                             )        **RECOMMENDATION**
11  RAFAEL G. JUAREZ, MD, *et al.*,            )
                                             )        Motion to Remand (#7)
12                      Defendants.           )
    _____ )
13

14       This matter comes before the Court on Plaintiff's Motion for Remand (#7), filed on

15  December 13, 2012.  Defendant Boston Scientific Corporation ("BSC") filed an Opposition (#12)

16  on December 31, 2012.  Plaintiff filed a Reply (#15) on January 10, 2013.

17                                    **BACKGROUND**

18       Plaintiff brought this action for negligence and strict products liability in the Eighth Judicial

19  District Court of Nevada ("State Court") on October 23, 2011 in *Velvette Hannig v. Rafael Juarez,*

20  *MD*, Case No. A-11-650503-C.  Plaintiff filed an amended complaint ("Complaint")[1] on October

21  25, 2011, adding BSC as a party.  Following service of the Complaint on November 13, 2012, BSC

22  filed its Petition for Removal (#1) on December 3, 2012.  The United States Judicial Panel on

23  Multidistrict Litigation entered a Conditional Transfer Order (#19) on April 1, 2013, transferring

24  the case to Multidistrict Litigation No. 2326 ("MDL").

25       Plaintiff alleges that on June 2, 2009, Defendant Juarez performed surgery upon Plaintiff to

26  address stress urinary incontinence and pelvic organ prolapse ("POP") that included implantation of

27  a pelvic mesh product designed, manufactured, packaged, labeled, marketed, and sold by BSC.  As

28

    _____

    [1] The operative complaint is attached as Exhibit A within Defendant's Petition for Removal (#1).

a result, Plaintiff claims she suffered vaginal shortening, tightening, and pain.  Plaintiff represents that on July 13, 2011, the Food and Drug Administration ("FDA") issued a safety communication stating that "serious complications associated with surgical mesh for transvaginal repair of POP are not rare" and have been "reported in the published scientific literature and in adverse event reports to the FDA."  Plaintiff further represents that the American College of Obstetricians and Gynecologists also identified physical and mechanical changes to the mesh product inside the body as a serious complication associated with vaginal mesh.  As a basis for her medical malpractice claim, Plaintiff asserts these risks, which were not communicated to Plaintiff prior to her procedure, should have been known and communicated by Defendant Juarez at the time of the subject operation.

Plaintiff and Defendants Juarez and Deseret Womens Health Care, LLC ("Healthcare Defendants") are residents of Nevada.  Defendant BSC is a resident of Massachusetts.  In removing the instant case to this Court, BSC asserts that the Healthcare Defendants were improperly joined in Plaintiff's Complaint to defeat diversity jurisdiction.  *See Notice of Removal, Doc. #1* at ¶ 9. Plaintiff seeks to remand the entire case, and BSC proposes the Court sever and remand only the claims against the Healthcare Defendants.

## DISCUSSION

Removal to federal court based on diversity jurisdiction is proper if "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).   The party seeking to invoke federal jurisdiction bears the burden of establishing jurisdiction. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).  The removal statutes are construed restrictively, and any doubts about removability are resolved in favor of remanding the case to state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Although Plaintiff and Healthcare Defendants are both residents of Nevada, BSC asserts Healthcare Defendants were not properly joined.  Defendants are properly joined in one action if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and there is a common question of fact or law.  Fed. R. Civ. P. 20(a)(2)(A)-(B).  This standard is nearly

1  identical to the Nevada rule on permissive joinder.  Nev. R. Civ. P. 20.  *See also Greene v. Wyeth*,

2  344 F.Supp.2d 674, 683 (D. Nev. 2004) (Because the language of Nevada's Rule and the Federal

3  Rule are substantively identical, choice of law need generally not be addressed).  Misjoinder of

4  parties, however, is not a ground for dismissing an action.  *See* Fed. R. Civ. P. 21.  Rather, on

5  motion or on its own, courts may at any time, "on just terms, add or drop a party.  The court my

6  also sever any claim against a party."  *Id.*

7      At issue in the instant Motion is whether the "procedural misjoinder" doctrine set forth in

8  *Tapscott v. MS Dealer Services Corp.*, 77 F.3d 1353 (11th Cir. 1996) may properly be applied in

9  the Ninth Circuit.  It is well established in this Circuit that if a "plaintiff fails to state a cause of

10  action against [a] defendant, and the failure is obvious according to the settled rules of the state, the

11  joinder of the resident defendant is fraudulent."  *McCabe v. General Foods Corp.,* 811 F.2d 1336,

12  1339 (9th Cir.1987).  The fraudulent joinder of a nondiverse defendant does not defeat otherwise

13  proper diversity jurisdiction.  Fraudulent joinder is a term of art and does not require a showing of

14  bad faith or unethical conduct by plaintiff.  When fraudulent joinder is an issue, the defendant

15  seeking removal is entitled to present facts showing that "the individuals joined in the action cannot

16  be liable on any theory."  *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998), *cert.*

17  *denied*, 525 U.S. 963 (1998).  The court may pierce the pleadings and consider summary judgment-

18  type evidence such as affidavits and deposition testimony.  *Morris v. Princess Cruise, Inc.*, 236

19  F.3d 1061, 1068 (9th Cir. 2001).

20      In *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3rd Cir. 1992), the Third Circuit stated

21  that the removing party carries a heavy burden of persuasion to demonstrate that the resident

22  defendant was fraudulently joined.  The removing defendant should have this burden because the

23  removal statutes are to be strictly construed against removal and all doubts should be resolved in

24  favor of remand.  District court decisions in this district have relied on *Batoff.  See King v. Warner-*

25  *Lambert Co.*, 2002 WL 988167, at *1 (D.Nev. 2002); *Grabez v. Wal-Mart Stores, Inc.*, 2010 WL

26  4873266, at *2 (D.Nev. 2010); *Rundle v. DePuy Orthopaedics, Inc.*, 2011 WL 3022569 (D. Nev.

27  2011).  *Batoff* states:

28  . . .

3

1

[I]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court. . . . [W]here there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses.

*Id.* 977 F.2d at 851-852.  (internal quotation marks and citations omitted).

The Eleventh Circuit, however, has set forth a doctrine that even parties against whom plaintiffs have asserted colorable claims may be procedurally misjoined.  *See Tapscott*, 77 F.3d at 1360.  The Eleventh Circuit held that procedural misjoinder applies "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant."  *Id.  Tapscott* required more than "mere misjoinder" and held that the attempted joinder was "so egregious" that it was fraudulent.  *Id.*  In *Tapscott*, plaintiffs attempted to join claims brought by one class of plaintiffs against one set of defendants with another group of factually unrelated claims brought by a second class of plaintiffs against a second group of defendants where there was "no real connection" between the two groups.  *Id.*  On appeal, the Eleventh Circuit affirmed the district court's denial of the plaintiffs' motion to remand, finding that because the sets of defendants were unrelated, plaintiffs' "attempt to join these parties [was] so egregious as to constitute fraudulent joinder."  *Id.*

BSC now invites this Court to apply *Tapscott's* doctrine to the case at hand, alleging Plaintiff procedurally misjoined BSC and the Healthcare Defendants.  Neither the Ninth Circuit nor any other federal circuit has adopted *Tapscott*.  *See Watson v. Gish*, 2011 WL 2160924 at *3 (N.D. Cal. 2011).  *Tapscott* has received considerable treatment from various district courts within the Ninth Circuit, however.  This Court preliminarily notes that, in the vast majority of cases, the district courts decline to follow *Tapscott*.[2]  The greatest number of cases take the same approach as

---

[2] See, e.g., *Sutton v. Davol, Inc.*, 251 F.R.D. 500 (E.D. Cal. 2008); *Elmore v. Merck & Co., Inc.*, 2007 WL 956893 (D. Nev. 2007); and *Green v. Wyeth*, 344 F.Supp.2d 674 (D. Nev. 2004) following *Tapscott*; cf. *Watson v. Gish*, 2011 WL 2160924 (N.D. Cal. 2011); *HVAC Sales, Inc. v. Zurich Am. Ins. Group*, 2005 WL 2216950 (N.D. Cal. 2005); *Thakor v. Burlington Ins.*, 2009 WL 1974511 (N.D. Cal. 2009); *Osborn v. Metropolitan Life Ins. Co.*, 314 F.Supp.2d 1123 (E.D. Cal. 2004); *N.C. ex rel Jones v. Pfizer*, 2012 WL 1029518 (N.D. Cal 2012); *Haische v. Allstate*,

1    the Ninth Circuit in *California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc*., 24 Fed.

2    Appx. 727, 729 (9th Cir. 2001), which is assuming, *arguendo*, that *Tapscott* applies. ("For purposes

3    of discussion we will assume, without deciding, that this circuit would accept the doctrines of

4    fraudulent and egregious joinder as applied to plaintiffs.")

5        Certain district court treatments of *Tapscott* are particularly instructive.   In *Sutton v. Davol*

6    *Inc.*, 251 F.R.D. 500, 502 (E.D. Cal. 2008), Plaintiffs filed a complaint against nondiverse medical

7    personnel for malpractice and negligence for the surgical installation of a previously-recalled

8    medical device, and against the diverse manufacturer of the recalled device for product liability.

9    The district court noted that the Ninth Circuit only recognizes one exception to the requirement of

10   complete diversity, when a defendant against whom plaintiff does not state a cause of action is

11   fraudulently joined under *McCabe*. *Id.* at 503.  The district court found that the plaintiffs' claims

12   against the nondiverse defendants satisfied the *McCabe* test, but went on to analyze the joinder

13   under *Tapscott*. *Id.*  After acknowledging the split among courts within the Ninth Circuit as to

14   *Tapscott's* applicability, the court found the diverse defendant's argument that the negligence and

15   product liability claims were distinctly compelling, "especially in the context of multidistrict

16   litigation." *Id.* at 504.  The court therefore severed and remanded the plaintiffs' claims against the

17   nondiverse defendant.  *Id.* at 507.

18        The Court in *Watson v. Gish*, 2011 WL 2160924 (N.D. Cal. 2011) reached a different

19   conclusion with a similar set of facts.  The *Watson* plaintiff filed negligence and malpractice claims

20   against the nondiverse healthcare entities that prescribed her a defective drug, and strict liability

21   claims against the diverse manufacturer of the drug.  *Id.* at *1.  After finding that the subject joinder

22   satisfied the *McCabe* test, the court addressed the diverse defendant's reliance on *Tapscott*.  *Id.* at

23   *3.  The court followed the majority position of district courts within the Ninth Circuit, and applied

24   *Tapscott* for the sake of argument.  *Id.*  The court then found *Tapscott* "readily distinguishable:"

25

26   942 F.Supp. 1245 (D. Ariz. 1996); *Aaron v. Merck & Co, Inc.*, 2005 WL 5792361 (C.D. Cal. 2005); *Flores v. Chevron*, 2011 WL 2160420 (C.D. Cal. 2011); *Early v. Northrop Grumman Corp.*, 2013 WL 3872218 (C.D. Cal. 2013); *Coastal*

27   *Const. Co. Inc. v. North American Specialty Ins. Co.*, 2010 WL 2816694 (D. Ha. 2010); *Sturn v. United Services Auto Ass'n.*, 2013 WL 2135356 (N.D. Cal. 2013); *Perry v. Luu*, 2013 WL 3354446 (E.D. Cal. 2013); and *Martin v. DePuy*

28   *Orthopaedics*, 2013 WL 607855 (S.D. Cal. 2013) declining to follow *Tapscott*.

1
2
3
4
5

> Unlike *Tapscott*, the instant case does not involve two distinct classes that have "no real connection" to each other. To the contrary, there is only one plaintiff whose claims arise from adverse reactions she suffered allegedly as a result of the [nondiverse defendants'] administration of a medication produced by [the diverse defendant]. Though there may be some factual and legal issues that may bear uniquely upon each Defendant's liability, it is readily apparent that an interrelationship exists between the Defendants in this case that was absent in *Tapscott*.

6   *Id.* at *4. The *Watson* court therefore remanded the entire case to the state court. *Id.*

7   The district court in *Osborn v. Met. Life Ins. Co.*, 341 F.Supp.2d 1123 (E.D. Cal. 2004)

8   similarly declined to follow *Tapscott*. The plaintiff in *Osborn* was denied insurance coverage for

9   an accident by the diverse defendant. *Id.* at 1124. Shortly thereafter, he moved into a new

10   residence and began to suffer a variety of undiagnosed serious symptoms. *Id.* A doctor confirmed

11   that the plaintiff's symptoms were the result of mold exposure, and advised him to move out of the

12   residence. Plaintiff was then denied homeowner insurance coverage by the nondiverse defendant.

13   *Id.* at 1126. Plaintiff then made an additional request of benefits on the diverse defendant citing the

14   new diagnosis, and the diverse defendant continued to deny benefits. *Id.* Plaintiff filed suit,

15   joining both defendants together in a single action. *Id.* After determining there was no fraudulent

16   joinder under *McCabe*, the district court addressed the diverse defendant's reliance on *Tapscott* as

17   follows:

18
19
20
21
22
23

> My own judgment is that the last thing the federal courts need is more procedural complexity. I thus conclude that the better rule would require [the diverse defendant] to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the case to federal court[...] In sum, because there appears to be no reason to develop a fraudulent misjoinder theory, and because of the uncertainty as to how such a theory should be applied, I respectfully decline to apply it. This conclusion is supported by the well-recognized doctrine that a removing party bears a heavy burden of persuasion and that if there is any doubt as to whether removal was proper, remand is required.

24   *Id.* at 1127-28 (internal citations omitted). The court then remanded the case to the state court. *Id.*

25   at 1128.

26   This District has twice relied on *Tapscott* in deciding motions to remand. In *Green v.*

27   *Wyeth*, 344 F.Supp.2d 674, 677 (D. Nev. 2004), a group of plaintiffs filed suit against the

28   nondiverse prescribers of and the diverse manufacturer of a defective drug which was the subject of

6

a multidistrict litigation. The court first noted that the face of the complaint indicated that diversity was not present. *Id.* at 679. The court, after determining that questions remained as to whether the statute of limitations had run against the nondiverse defendants, declined to disregard their citizenship under *McCabe's* fraudulent joinder test. *Id.* at 681. The *Green* court found, however, that there was procedural misjoinder because each plaintiff did not have claims against the nondiverse defendants:

> Only two of the plaintiffs [...] actually have claims against the nondiverse defendants[...] [T]he only common attribute among the Plaintiffs' claims against the [diverse defendants] and those against the non-diverse defendants is that each Plaintiff ultimately ingested [the subject drug] due to the alleged actions of one or more of these Defendants. Several courts have held that the ingestion of medication among various Plaintiffs alone cannot constitute the "same transaction or occurrence."

*Id.* at 683-684 (internal citations omitted). The Court then applied *Tapscott* to support severance and remand of the claims against the nondiverse defendants:

> Although the Ninth Circuit has not yet published an opinion addressing the fraudulent misjoinder rule, this Court agrees with the Fifth and Eleventh Circuits that the rule is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court. Although it is impossible to know which standard would be employed by the Ninth Circuit in determining whether the misjoinder warrants severance, this Court is mindful of its authority under the Federal Rules of Civil Procedure, Rule 21, to add or drop parties to a suit "at any stage of the action and on such terms as are just."

*Id.* at 684-685.

Finally, in *Elmore v. Merck & Co., Inc.*, 2007 WL 956893 (D. Nev. 2007), the court was again presented with the same familiar set of facts. The plaintiffs filed suit against the diverse manufacturer of an allegedly defective drug for strict liability, and against nondiverse representatives of the manufacturer for negligence. *Id.* at *1. The diverse defendants asserted that the nondiverse defendants were fraudulently joined under *McCabe* because they owed plaintiffs no duty to warn under Nevada law. *Id.* at *3. The court disagreed, but then analyzed the joinder for procedural misjoinder under *Tapscott*. *Id.* at *4. The court ultimately found that the claims arose out of the same transaction and occurrence, and concluded that joinder "is not so egregious as to be deemed fraudulent." *Id.*

. . .

7

1    Here, the pleading papers suggest BSC does not contend the joinder at issue is fraudulent

2    under *McCabe*.  Under *McCabe*, joinder is proper if the state court would find the complaint states

3    any cause of action against the nondiverse defendant.  *McCabe,* 811 F.2d at 1339.  Under the liberal

4    pleading standards of Rule 8, the Court finds that Plaintiff states a claim against the Healthcare

5    Defendants.  BSC has not satisfied the "heavy burden" of demonstrating that "the individuals

6    joined in the action cannot be liable on any theory," *Ritchey*, 139 F.3d at 1318, and therefore has

7    not established that the Healthcare Defendants were fraudulently joined.

8    There remains, then, the question of whether the Healthcare Defendants were procedurally

9    misjoined under *Tapscott*.  Like the majority of district courts in the Ninth Circuit that have

10   addressed procedural misjoinder, however, this Court also declines to follow *Tapscott's* doctrine.

11   The Court is persuaded by the policy concerns set forth by the *Osborn* court, and agrees that the

12   manner in which a procedural misjoinder theory should be applied is uncertain.  Indeed, "it is

13   impossible to know which standard would be employed by the Ninth Circuit in determining

14   whether [a] misjoinder warrants severance."  *Green*, 344 F.Supp.2d at 683-84.

15   Furthermore, even were this Court to apply *Tapscott*, the Court would reach the same

16   conclusion that the joinder was proper.  Like *Watson*, this case is easily distinguishable from

17   *Tapscott* and *Green*.  Unlike *Tapscott*, the instant case does not involve two distinct classes of

18   plaintiffs and defendants with "no real connection" to one another.  Rather, there is only one

19   plaintiff whose claims arise from adverse reactions she allegedly suffered as a result of the

20   Healthcare Defendants' surgical implantation of a device manufactured by BSC.  "Though there

21   may be some factual and legal issues that may bear uniquely upon each Defendant's liability, it is

22   readily apparent that an interrelationship exists between the Defendants in this case." *Watson*, 2011

23   WL 2160924 at *4.  *Green* is similarly inapposite, as the singular plaintiff here asserts claims

24   against all defendants.  Furthermore, BSC's argument that there is no real connection between

25   claims because some are based on strict liability and negligence for the manufacture of the device,

26   and others are based on negligent implantation of the device, is unpersuasive.  Although the claims

27   for relief differ, they are all premised on the allegedly harmful effects produced by the pelvic mesh.

28   . . .

The Court would find under *Tapscott*, then, that the joinder was not so egregious as to be fraudulent.  Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand (#7) be **granted**.

## NOTICE

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  Appeals may been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 27th day of August, 2013.


GEORGE FOLEY, JR.
United States Magistrate Judge